NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260038-U

NOS. 4-26-0038, 4-26-0152 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 7, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* COMPLAINT FOR SEARCH WARRANT | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Jersey County |
| | ) | No. 25MX67 |
| | ) | |
| | ) | Honorable |
| | ) | Allison Lorton, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court lacks authority to consider a motion by a nonparty to whom the court has not given permission to intervene, and a notice of appeal filed by such a nonparty is unauthorized and void.

¶ 2    In the circuit court of Jersey County, a complaint for a search warrant was filed, resulting in the initiation of this case, Jersey County case No. 25-MX-67. No defendant was named. The court issued a search warrant. Then, without moving for permission to intervene, Robert E. Dorman filed motions in this case, requesting the quashing of the search warrant, the unsealing of the search warrant affidavit, and various other remedies. The court dismissed the motions because Dorman was a nonparty. He filed two notices of appeal from the dismissals. We have consolidated the appeals, which we now dismiss because a notice of appeal by a nonparty is unauthorized and void, as are the nonparty's motions.

¶ 3                                    I. BACKGROUND

¶ 4          On November 17, 2025, a complaint for a search warrant was filed, and the circuit court issued a search warrant.

¶ 5          On November 26, 2025, Dorman, who had not been named as a party, filed three documents in this action for a search warrant.

¶ 6          The first document was an entry of appearance, in which he stated, "I am the individual whose Facebook account was the subject of Search Warrant 25MX67, and I appear for the purpose of filing motions and seeking relief related to that warrant."

¶ 7          The second document was a motion titled "Verified Motion to Quash Search Warrant and for Protective Order." Therein, Dorman represented he was "an Illinois citizen whose personal Facebook information, as well as information belonging to a certain registered Illinois nonprofit, was targeted by a Jersey County search warrant issued November 17, 2025." This nonprofit organization was, according to the motion, "an advocacy organization whose members engage[d] in speech on matters of public concern, including commentary about political officials and public corruption," and the search warrant sought "First Amendment-protected information, including identities and online associations of the non-profit members." See U.S. Const., amend. I. The motion characterized the search warrant as "facially defective, unsupported by probable cause, and retaliatory in purpose." "The apparent purpose of the warrant," the motion claimed, was "not to obtain evidence of a crime" but, rather, to "discover the identities of persons associated with the nonprofit critical of political officials in Madison and Jersey Counties." The motion alleged that Dorman and Jersey County governmental officials had reached an agreement regarding the Facebook information and that although Dorman had fulfilled his part of the agreement, the county had not fulfilled its part. The motion stated, in part, as follows:

"3. A high-ranking official within Jersey County government with lawful authority represented to [Dorman's] counsel on November 20, 2025[,] that if certain posts were removed, the County would withdraw the search warrant.

4. [Dorman], relying on that official assurance, fully complied with his portion of the agreement on November 20, 2025[,] and removed the referenced posts.

5. Despite attempts to confirm Meta/Facebook has been notified of the withdrawal, it appears no effort has been made to notify Meta that the search warrant has in fact been withdrawn."

Therefore, the motion requested that the circuit court do the following:

"A. Quash the search warrant issued in Case No. 25-MX-67;

B. Order Meta Platforms, Inc. not to comply with any request for information pursuant to the warrant;

C. Order Jersey County to provide written confirmation of withdrawal to Meta; [and]

D. Enter a protective order prohibiting compelled disclosure of MCPTF member identities."

MCPTF, apparently, was the initials of the nonprofit organization.

¶ 8    The third document that Dorman filed on November 26, 2025, was titled "Motion to Unseal Search Warrant Affidavit." In that motion, Dormant alleged that "[he] and/or an Illinois registered nonprofit of which he [was] a member ha[d] been the apparent target of a search warrant issued in this matter, accompanied by implied threats of felony prosecution." The motion further alleged, "[o]n information and belief," that the affidavit submitted to the circuit

court in support of the complaint for a search warrant "contain[ed] materially false statements and mischaracterize[d] the publicly available information, including the plainly non-sexual and public nature of the non[ ]profit's Facebook page." The affidavit, however, "remain[ed] under seal," and, thus, Dorman was unable to "review[ ] the basis of the intrusion." "Judicial integrity require[d] that affidavits used to obtain search warrants be open to scrutiny," the motion argued, "especially where First Amendment activity is implicated." Court records were "presumptively open," the motion continued, Dorman had "a First amendment and common-law right to inspect the court file and review the affidavit underpinning the warrant," and there was "no ongoing investigation, no confidential informant," and no exceptional circumstances to justify the continued sealing of these records. Therefore, the motion requested that "the affidavit used to obtain the November 17, 2025[,] search warrant be unsealed" and that Dorman "be provided a complete copy immediately."

¶ 9            On December 2, 2025, State's Attorney Benjamin L. Goetten filed a document titled "People's Response to Motion To Unseal Search Warrant Affidavit." Citing *In re Gee*, 2010 IL App (4th) 100275, ¶ 31, Goetten argued, "[Dorman] provides no compelling reason for the Court to disregard the well-settled rule in Illinois that sealed warrant affidavits are not subject to right of access." "To unseal the subject affidavit," Goetten cautioned, "would hinder an ongoing criminal investigation by the State."

¶ 10            On December 4, 2025, the circuit court entered an order providing that because Dorman "[was] not currently charged with an existing criminal offense over which this court has jurisdiction as required in 725 ILCS 5/114-12," the " 'Motion to Quash Search Warrant and for Protective Order' " was dismissed. Also, because he was "not a party to this action," the " 'Motion To Unseal Search Warrant Affidavit' " likewise was dismissed. The "Affidavit and

- 4 -

Complaint for Search Warrant, order for search warrant[,] and any attendant documents [were to] remain sealed pending ongoing investigation and until further order of the court."

¶ 11　　　　　On December 22, 2025, Dorman filed a "Verified Motion to Reconsider December 4, 2025[,] Order and for Limited *in Camera* Review." In this motion for reconsideration, Dorman disclosed, "Meta *** provided notice of the search warrant to [Dorman], indicating that the Facebook page identified in the warrant is associated with [Dorman's] personal Meta/Facebook account for notice purposes." Thus, to further quote the motion for reconsideration, Dorman was "the direct target of the search warrant and the individual whose account-associated data is subject to compelled disclosure, giving [Dorman] a personal and substantial Fourth Amendment interest." See U.S. Const., amend. IV. The Jersey County sheriff, Nicholas J. Manns, had written Dorman on August 19, 2025, "stat[ing] that he ha[d] initiated a felony criminal investigation involving [Dorman] and reference[d] evidentiary materials associated with the Facebook page identified in the warrant." Nevertheless, Dorman pointed out, probable cause for the issuance of the warrant had to be "based solely on the information presented to the issuing judge at the time the warrant was sought." To "preserve[ ] the integrity of any ongoing investigation while ensuring that the Court's compulsory order [was] not executed in a manner that foreclose[d] meaningful judicial insight," Dorman requested that the court "[c]onduct limited *in camera* review" of the "foundational materials outside the warrant materials disclosed to him"

¶ 12　　　　　Also, on December 22, 2025, Dorman moved that the circuit court stay the execution of the search warrant until after it ruled on the motion for reconsideration.

¶ 13　　　　　On January 2, 2026, the circuit court ruled:

　　　　　"For the reasons as set forth in this court's order of December 4, 2025, the

motions filed by [Dorman] on December 22, 2025[,] are dismissed. Affidavit and Complaint for Search Warrant, order for search warrant[,] and any attendant documents remain sealed pending ongoing investigation and until further order of the court."

¶ 14 On January 6, 2026, Dorman filed a document titled "Post-Execution Motion for Confirmation of Execution, Return, and Inventory; and for Identification of Materials Obtained" (Post-Execution Motion). In this motion, he requested that, pursuant to section 108-10 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/108-10 (West 2024)), the circuit court

"A. Confirm on the record whether the search warrant issued November 17, 2025[,] has been executed and whether returns have been received from Meta Platforms, Inc.; [and]

B. Direct that [Dorman] be provided the return and inventory, or other description required by law, identifying the categories of materials obtained pursuant to the warrant, to the extent not already provided."

¶ 15 On January 29, 2026, the circuit court "dismissed" the Post-Execution Motion.

¶ 16 On January 8, 2026, Dorman appealed the orders of December 4, 2025, and January 2, 2026. We docketed that appeal as No. 4-26-0038.

¶ 17 On January 30, 2026, he appealed the order of January 29, 2026. We docketed that appeal as No. 4-26-0152.

¶ 18 We have consolidated the two appeals.

¶ 19 II. ANALYSIS

¶ 20 "A search warrant is in the nature of criminal process. Its purpose is to aid in the

detection and punishment of crime. It has no relation to civil process or civil trials." *People v. Dolgin*, 415 Ill. 434, 443 (1953). Therefore, this case, the whole purpose of which was to obtain the issuance of a search warrant, is a criminal case. See *id.*

¶ 21    In *People v. Zimmerman*, 2018 IL 122261, ¶ 22, which likewise was a criminal case, the majority of the supreme court held that an "order *** circumscribing public access to documents [was] reviewable under [Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2016)] as an interlocutory injunctive order," even though, as Justice Thomas pointed out in his dissent, Rule 307(a) was a civil appeal rule instead of a criminal appeal rule (*id.* ¶¶ 54-55 (Thomas, J., dissenting)). The present case is a criminal case in which the circuit court circumscribed public access to documents.

¶ 22    Nevertheless, *Zimmerman* is distinguishable because, in *Zimmerman*, news media organizations petitioned to intervene in the criminal case (*id.* ¶ 5 (majority opinion)) and the circuit court granted their petition (*id.* ¶ 7). (We note that the Code of Civil Procedure (735 ILCS 5/1-101 *et seq.* (West 2024)), which applies to civil cases, has a section allowing applications for intervention in an action (*id.* § 2-408) but the Criminal Procedure Code, which applies to criminal cases, lacks such a section. Even so, the appellate court has held that news media organizations have the right to apply for permission to intervene in criminal cases. *People v. Kelly*, 397 Ill. App. 3d 232, 243 (2009).) Dorman, by contrast, did not apply for permission to intervene in Jersey County case No. 25-MX-67—as he would have needed to do since (1) he was not the plaintiff who initiated the case and (2) he was not named as a defendant—nor did the circuit court give him permission to intervene.

¶ 23    Perhaps Dorman would retort that the case concerned him because the State sought information "associated with" his Facebook account. It does not follow, though, that he

was a party to the case. Nonparties apply for permission to intervene precisely because the case somehow concerns them. Without permission to intervene in Jersey County case No. 25-MX-67, Dorman was an intruder in that case.

¶ 24        The circuit court was right, then, to dismiss Dorman's motions. Because Dorman was a nonparty, the court lacked authority to consider his motions, as the court correctly perceived. See *MidFirst Bank v. McNeal*, 2016 IL App (1st) 150465, ¶ 18. Likewise, we are without authority to consider his appeals, for "an appeal by a person not a party to the record is unauthorized and void." *Stone v. Baldwin*, 414 Ill. 257, 262 (1953).

¶ 25                                III. CONCLUSION

¶ 26        For the reasons stated, we dismiss these consolidated appeals.

¶ 27        Appeals dismissed.